UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TIMOTHY P. MANGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:11-CV-369 PS |
| | ) | |
| TERRY HARMAN, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Timothy Manges is a Greek Orthodox prisoner currently confined at the Pendleton Correctional Facility, who alleges that officials at the Indiana State Prison interfered with the exercise of his religion while he was confined at the ISP. Manges filed his complaint in the LaPorte Circuit Court [DE 1], but the defendants removed the complaint to this court pursuant to 28 U.S.C. §§ 1441 and 1446 [DE 3].

This case is before me on the Plaintiff's amended complaint [DE 12]. The defendants named in the amended complaint are ISP Chaplains Terry Harman and David Rogers, ISP Superintendent William Wilson, Assistant Superintendents Dan McBride and Ron Neal, Executive Assistant Howard Morton, Grievance Assistant Lori Smales (Bootz), Indiana Department of Correction Religious Service Director Steven Hall, and former ISP official Mark Levenhagen. In his amended complaint, Manges seeks damages and injunctive relief.

Pursuant to 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for

failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

In the context of a motion to dismiss for failure to state a claim, the United States Supreme Court has stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). Instead, the Supreme Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* In *Erickson v. Pardus*, 551 U.S. 89 (2007), the Court also took up the issue of pleading standards, but this time in the context of *pro se* litigation. In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). *Id.* at 93. The Court further noted that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94 (internal citations and quotations omitted). The Seventh Circuit has read *Twombly* and *Erickson* together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). In the end, a complaint, to withstand a motion to dismiss, must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Manges brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law.

*Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004). To state a claim under § 1983, a plaintiff must allege the violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 49 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

**I.     Claims for Injunctive Relief**

The Plaintiff seeks both damages and injunctive relief requiring ISP officials to cease "imposing restrictions on prisoners' religious services without due process and using suspensions from religious services as punishment, [and] stop canceling religious services for lack of volunteers" [DE 12 at 9]. But Manges is no longer confined at the ISP: he is now housed at the at the Pendleton Correctional Facility, and there is no reasonable basis to believe that he is likely to be retransferred to the ISP [DE 16; DE 17]. Thus, Manges' injunctive relief claims are moot.

If a prisoner is released or transferred to another prison, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Manges' transfer renders his requests for injunctive relief against ISP officials moot. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied,* 501 U.S. 1208 (1991). It is theoretically possible that Manges could at some point in the future return to the ISP, but the mere possibility that this might occur is insufficient. The standard to be applied here is whether he is "likely to be retransferred," and "[a]llegations of a likely retransfer may not be based on mere speculation,"

and the plaintiff must make a "showing or a demonstration of the likelihood of retransfer." *Higgason*, 83 F.3d at 811 (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). Here, there are no allegations in the complaint that rise to the level of a showing or demonstration that a transfer back to ISP is at all likely, and so Manges' claims for injunctive relief are moot and must be dismissed.

## II.     First Amendment Free Exercise Claims

In counts one, two, four, five, seven, and nine of his amended complaint, Manges alleges that the Defendants denied him the opportunity to attend Eastern Orthodox services and turned away a priest who had come to the ISP to conduct services [DE 12]. Prison administrators must permit inmates a reasonable opportunity to exercise religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988). "[M]aintaining institutional security and preserving internal order are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Federal courts are not to interfere in the daily administration of state prisons absent substantial evidence that they have acted disproportionately to correctional needs. *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

Rule 8 "establishes a system of notice pleading," and a claim may not be dismissed at the

pleading stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Giving Manges the benefit of the inferences to which he is entitled at the pleading stage, his claim that ISP officials interfered with the exercise of his religion states a plausible First Amendment free exercise claim, and so it can proceed.

### III. Claims under the Religious Land Use and Institutionalized Persons Act

In counts one, two, four, five, seven, and nine of his amended complaint, Manges also asserts that the Defendants violated rights protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc [DE 12]. Manges alleges that the Defendants violated RLUIPA by placing substantial and unnecessary burdens on the practice of his religion while he was confined at the ISP.

Prisoners may not obtain either official or individual capacity damages on RLUIPA claims: instead, they are limited to claims for injunctive relief. *Maddox v. Love*, 655 F.3d 709, 716-17 (7th Cir. 2011), citing *Sossamon v. Texas*, 131 S.Ct. 1651, 1658–59 (2011); *Nelson v. Miller*, 570 F.3d 868, 884–86, 889 (7th Cir.2009). As noted above, Manges's transfer from the Indiana State Prison to the Pendleton Correctional Facility renders his injunctive relief claims moot. Because Manges has no claim for injunctive relief, he cannot obtain any relief under RLUIPA.

### IV. Grievance Claims

In count two of his amended complaint, Manges alleges that he filed a grievance about being suspended from attending religious services, but that Defendants Morton and Smales "refused to investigate the matter" [DE 12 at 4]. In counts one, three, four, five, six, seven,

5

eight, and nine of his amended complaint, Manges alleges that upon receiving the grievance appeal, Indiana Department of Correction ("IDOC") Director of Religious Services Steven Hall failed to issue any kind of directive or order to correct or prevent further occurrences [DE 12 at 5, 6, 7, and 8].

But "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process clause." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). In other words, a prisoner lacks process rights with respect to the prison grievance procedures, and if a grievance official ignores, mishandles, or denies a prisoner's grievance, but did not cause or otherwise participate in the underlying conduct, that does not state a claim under § 1983. *Id.*; *see also George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [Constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation") (citations omitted). Accordingly, the Plaintiff states no claim upon which relief can be granted against Defendants Morton, Smales, and Hall, who he simply alleges were responsible for processing and investigating grievances.

**V.     Retaliation Claims**

In count three of his amended complaint, Manges alleges that Defendant Harman retaliated against him for filing a grievance by suspending him from religious services [DE 12 at 4-5]. In counts six and 8 of his amended complaint, Manges asserts that Defendants Harman, McBride, and Wilson also retaliated against him for filing grievances [DE 12 at 5], in particular by removing him from a religious service in retaliation for filing a grievance [DE 12 at 7]. He states that "Harman specifically said that he was 'tired of all [Plaintiff's] paper work and grievances and it is going to stop.'" [*Id.*; alteration in original].

To establish a retaliation claim, Manges must establish that he engaged in a

6

constitutionally protected activity, that he suffered a deprivation that would likely deter First Amendment activity in the future, and that the First Amendment activity was "at least a motivating factor" in the Defendants' decision to retaliate against him. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Retaliation against a prisoner for filing a grievance states a claim upon which relief can be granted. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir.2000); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). Giving Manges the benefit of the inferences to which he is entitled at the pleading stage, the court cannot say that he can prove no set of facts in support of his claim that Defendants Harman, McBride, and Wilson retaliated against him for filing grievances that would entitle him to relief.

## VI. Conclusion

For the Foregoing reasons, I:

(1) **GRANT** the Plaintiff leave to proceed against Defendants Harman, Rogers, Wilson, McBride, Neal, and Levenhagen in their personal capacities for damages on the Plaintiff's First Amendment claims in counts one, two, four, five, seven, and nine of his amended complaint that they interfered with the exercise of his religion, and leave to proceed against Defendants Harman, McBride, and Wilson in their personal capacities on his claims in counts three, six, and eight of his amended complaint that they retaliated against him for exercising his right to file grievances;

(2) **DISMISS**, pursuant to 28 U.S.C. § 1915A, all other claims, and **DISMISS** Defendants Howard Morton, Lori Smales (Bootz), and Steven Hall;

7

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), **ORDER** that Defendants Harman, Rogers, Wilson, McBride, Neal, and Levenhagen respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) **DIRECT** the Marshals Service to effect service of process on Defendants Harman, Rogers, Wilson, McBride, Neal, and Levenhagen and **DIRECT** the clerk's office to ensure that a copy of this order is served on them along with the summons and amended complaint [DE 12].

**SO ORDERED**.

ENTERED: July 24, 2012

<u>s/ Philip P. Simon</u>
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT